UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH MATA, o/b/o J.G.,

    Plaintiff,

v.                                     CASE No. 8:11-CV-1910-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments on behalf of her son.* Because the decision of the Commissioner of Social Security is supported by substantial evidence, and does not contain reversible error, the decision will be affirmed.

I.

J.G. was born on April 19, 1999, and was eleven years old at the time of the administrative decision (Tr. 32, 98). The plaintiff, who is the

---

*The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

child's mother, has filed a claim for supplemental security income on behalf of the child. She alleges that the child is disabled due to attention deficit disorder and bipolar disorder (Tr. 160). The claim was denied initially and upon reconsideration.

The child's mother, at her request, then received a de novo hearing before an administrative law judge. Following the hearing, the law judge found that the child suffers from severe impairments of "nocturnal enuresis, attention deficit disorder, bipolar disorder, depression, and oppositional defiant disorder" (Tr. 13). The law judge concluded that the child does not have an impairment that "meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (Tr. 15). The law judge also found that "[t]he claimant does not have an impairment or combination of impairments that functionally equals the listings" (id.). The law judge, therefore, determined that the child was not disabled (Tr. 21-22). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In 1996, the Social Security Act was amended with respect to eligibility for child's disability benefits. As amended, the Act now provides (42 U.S.C. 1382c(a)(3)(C)(i)):

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The Commissioner subsequently issued regulations explaining how this provision would be implemented in determining whether a child is disabled. See 20 C.F.R. 416.924.

Similar to the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R. 416.924(a). The first step is to determine whether the child is actually working at substantial gainful activity. 20 C.F.R. 416.924(b). If not, the second step asks whether the child has a severe impairment. 20 C.F.R. 416.924(c). If he does not, the child is considered not disabled. Id. If there is a severe impairment, the third, and final, step in the analysis is to determine

whether the child has an impairment that meets, medically equals, or functionally equals, a set of criteria in the Listing of Impairments in Appendix 1. 20 C.F.R. 416.924(d). If the child does, then he is deemed disabled. 20 C.F.R. 416.924(d)(1). If he does not, then he will be found not disabled. 20 C.F.R. 416.924(d)(2).

When determining functional equivalence, a child's limitations in the following six domains of functioning are evaluated: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being. 20 C.F.R. 416.926a(b)(1). An impairment functionally equals a listed impairment if the plaintiff shows that the child has an extreme limitation in one, or a marked limitation in two, of the six domains of functioning. 20 C.F.R. 416.926a(a). A marked limitation is one that interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(2)(i). It means a limitation that is more than moderate, but less than extreme. Id. An extreme limitation, which is the rating given to the worst limitations, is one that interferes very seriously with the child's ability

to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(3)(i).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff articulates her first, and primary, issue as follows: "the Commissioner erred in failing to adequately consider whether the plaintiff met the necessary criteria for a finding of severity at step two of the sequential evaluation, especially with regard to his mental impairments" (Doc. 26, p. 2). This contention is somewhat confusing because it indicates that it is directed at whether at step two the plaintiff had a severe mental impairment, whereas the plaintiff's arguments assert that the plaintiff met a listed impairment at step three.

Thus, the plaintiff first takes issue with the law judge's conclusion that her son did not meet, or equal, listing 112.05D of Appendix 1 for mental retardation (id., p. 8). "When a claimant contends that he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment, or, if in the alternative, he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such an equivalency." Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). The plaintiff has failed to make the required showing.

The plaintiff argues that her son's IQ scores should have resulted in a finding of disability under Childhood Listing 112.05D. That listing provides:

> 112.05 *Mental Retardation:* Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
>
> . . .
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental

>impairment imposing an additional and significant limitation of function; ...

Thus, in order to meet the criteria in listing 112.05D, the IQ score must be valid.

The plaintiff predicates her argument on the report of Dr. Fred L. Alberts, Jr., a psychologist who in July 2009 administered the Wechsler Intelligence Scale for Children - Fourth Edition (WISC-IV). Dr. Alberts reported that the child had a verbal comprehension IQ score of 67 and a full scale IQ score of 61 (Tr. 233). He opined that, as measured by the child's scores, the child's general cognitive ability and verbal reasoning ability fall within the mentally deficient range of functioning, his perceptual reasoning index and processing speed are in the borderline range, and his working memory abilities are in the low average range (Tr. 232). However, Dr. Alberts noted (Tr. 231-32):

>Initially, he was cooperative with the testing tasks but then would not respond or answer questions, despite what was asked of him. This seemed to be due in part to his embarrassment of not getting the correct answer; however, a similar lack of effort was found with regard to non-verbal tasks. Attention and concentration were impaired even on a one-to-one session.

Accordingly, Dr. Alberts stated that "[b]ased upon [the child's] response style to the verbal items, as well as the motivation demonstrated on non-verbal items, in combination with higher academic ability (Average), these results must be considered a minimal estimate of his true intellectual ability" (Tr. 233).

The law judge expressly found that the plaintiff did not meet, or equal, an Appendix 1 listing because the IQ scores from Dr. Alberts's examination were invalid (Tr. 15). This finding is clearly supported by substantial evidence. Thus, Dr. Alberts stated that the child's IQ scores "must be considered a minimal estimate of his true intellectual ability" (Tr. 233). Further, Dr. Arthur Hamlin, a reviewing nonexamining psychologist, noted that the "IQ scores do not seem consistent with [the] overall profile and [claimant] is not in EMH which would normally ... be the case with these scores and achievement scores are in the average-low average range" (Tr. 221). In September 2008, Dr. Sajjad F. Hussain, a treating psychiatrist, reported that the child's IQ was within normal limits (Tr. 217). Finally, as the law judge pointed out, no mental health expert had opined that the child had a diagnosis of mental retardation (Tr. 15).

The plaintiff contends that Dr. Alberts's statement that the IQ scores are a minimal estimate of the child's intellectual ability does not render the scores invalid (Doc. 26, p. 8). While Dr. Alberts did not state that the IQ scores were invalid, his report, coupled with the other evidence in the record, clearly permitted the law judge to conclude that the scores were not valid. Thus, Dr. Alberts set forth circumstances of the child's lack of effort, cooperation, concentration, and attention that could result in invalid scores. Moreover, Dr. Alberts was directed to assess, among other things, the child's intellectual functioning (Tr. 230). Consequently, if Dr. Alberts thought the scores were valid, he would have diagnosed mental retardation. In addition, based upon achievement tests, Dr. Alberts stated that the "results indicate that in each of the academic areas measured, [the child] is performing at a level fairly consistent with chronological expectancies" (Tr. 234). Under these circumstances, and the evidence from the other mental health experts, the law judge could reasonably find that the IQ scores were invalid and, correspondingly, that the child did not meet listing 112.05D for mental retardation.

In a related argument, the plaintiff suggests that the law judge erred by failing to recontact Dr. Alberts for clarification of his opinion

regarding the IQ scores, and that this failure resulted in an inadequately developed record (Doc. 26, pp. 8-10). This assertion is unavailing.

In the first place, the regulation quoted by the plaintiff on this point (id., p. 10) has been deleted. See 20 C.F.R. 416.912. The regulations now pertinently provide that a medical source who performed a consultative examination will be recontacted "[i]f the report is inadequate or incomplete." 20 C.F.R. 416.919p(b). The law judge obviously concluded that Dr. Alberts's report was neither inadequate or incomplete. That conclusion was plainly reasonable.

The plaintiff also challenges the law judge's decision for its failure to find that the child's "IQ impairments" were severe at step two of the sequential analysis (Doc. 26, p. 11). In this case, an incorrect determination at step two concerning whether the child's mental impairment should be labeled a severe impairment would not constitute reversible error. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Having concluded that the child had several other severe impairments, the law judge proceeded to step three and analyzed, among other things, whether the combination of the plaintiff's impairments amounted to the functional equivalent of a listed impairment. Maziarz v. Secretary of Health & Human Services, 837 F.2d

240, 244 (6th Cir. 1987). In doing so, he clearly considered any functional limitations caused by the child's mental condition (see Tr. 15-21). In this respect, the law judge stated, more than once, that in determining whether the child met, or functionally equaled, a listing, he was to consider the combined effect of all medically determinable impairments, even those that were not severe (Tr. 11). Consequently, it made no difference whether the law judge should have characterized the child's mental condition as a severe impairment.

Notably, the plaintiff makes no argument that child functionally equals a listed impairment. In this respect, the plaintiff only asserts in a conclusory manner that the law judge failed "to fully and adequately consider the effects of the [child's] intellectual impairments on his ability to acquire and use information" (Doc. 26, pp. 11-12).

The scheduling Order provided that "[t]he Plaintiff must identify with particularity the discrete grounds upon which the administrative decision is being challenged" and must support those challenges "by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 19, p. 2). These requirements have not been satisfied. Thus, the plaintiff has not even specified as an issue a contention that the child

functionally equals a listed impairment. Moreover, she has not cited to any facts or governing legal standards regarding the domain of acquiring and using information. Consequently, any contention concerning that domain or functional equivalency is deemed abandoned.

Nevertheless, it is appropriate to add that the law judge found that the child had a less than marked limitation in the domain of acquiring and using information (Tr. 17). In this respect, the law judge stated (id.):

> As noted above on Wechsler Intelligence testing for children, the claimant achieved a full scale IQ of 61, however the results were noted to be a minimal estimate of the claimant's true intellectual ability due to the fact that academic achievement testing indicated that in each of the academic areas measured, the claimant was performing at a level fairly consistent with chronological expectancies. Additionally, even with his attention deficit hyperactivity disorder, the claimant has not been in special education classes. Additionally, treatment notes from Mental Health Inc., showed no impairment in the claimant's intellectual functioning.

This finding is reasonable and supported by substantial evidence. Furthermore, it has not even been directly challenged by the plaintiff.

In sum, the plaintiff essentially based her challenge on the child's IQ scores. The law judge, however, found that those scores were

invalid. That finding was reasonably explained and supported by substantial evidence. Clearly, the plaintiff has not demonstrated that the evidence compels a contrary finding. Adefemi v. Ashcroft, supra.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 10th day of December, 2012.

*Thomas G. Wilson*
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE